UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LUZ M. RIOS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. EDCV 17-00546-JDE<br><br>MEMORANDUM OPINION AND ORDER |

　　Plaintiff Luz M. Rios ("Plaintiff") filed a complaint on March 22, 2017, seeking review of denials of her applications for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") by the Commissioner of Social Security ("Commissioner" or "Defendant"). (Dkt. No. 1.) The parties have consented to proceed before undersigned Magistrate Judge for all purposes. (Dkt. No. 13.) Consistent with the Order Re: Procedures in Social Security Appeal (Dkt. No. 9), on November 7, 2017, the parties filed a Joint Stipulation addressing their respective positions. (Dkt. No. 18 ("Jt. Stip.").) The matter is now ready for decision.

# I.
# BACKGROUND

Plaintiff applied for SSI and DIB on February 8, 2013. Administrative Record ("AR") 178-86. After her applications were twice denied (AR 110-13; 118-22; 124-28), Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 130-34. Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ on May 27, 2015. AR 36-59.

On August 21, 2015, the ALJ denied Plaintiff's claims. AR 16-34. The ALJ found Plaintiff had no substantial gainful activity since November 23, 2010, and suffered from the following severe impairments: depression and anxiety, none of which, individually or in combination, met or equaled a listed impairment. AR 21-22. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range or work at all exertional levels, but with the following non-exertional limitations (AR 23):

> [Plaintiff] is able to concentrate for up to two hours at a time, but is limited to only unskilled tasks; she is limited to nonpublic work; she is limited to low stress work, meaning no fast-paced production or assembly-line type work; she is precluded from work at unprotected heights, around moving machinery, or around other hazards; she is precluded from jobs requiring hypervigilance or intense concentration on a particular task, meaning she cannot perform jobs where the very nature of the work itself is such that a person could not be off task for even the shortest amount of time, like watching a surveillance monitor or where safety might be an issue; she is precluded from jobs where she would have responsibility for the safety or direction of others; the work should be essentially object oriented; the [Plaintiff] would likely be off

task for approximately 10 percent of the workday or work week, which is about 48 minutes a day or four hours a week due to psychological symptoms or side effects of medications; and the claimant would likely be absent from work two times a month.

The ALJ found that Plaintiff was capable of performing past relevant work as a stocker (Dictionary of Occupational Titles ("DOT") 222.387-058) and laundry worker (DOT 361.684-014).[1] As a result, the ALJ did not conduct a step five analysis and concluded that Plaintiff was not disabled. AR 29.

## II.

## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision denying benefits to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 522-23 (9th Cir. 2014) (citations and internal punctuation omitted). The standard of review of a decision by an ALJ is "highly deferential." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation omitted). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing and remanding the Commissioner's decision. 42 U.S.C. § 405(g).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53

---

[1] A vocational expert testified that Plaintiff's prior work as a mini-bar stocker was similar, but not an exact match, to the DOT description of a stock clerk. AR 58.

3

F.3d 1035, 1039 (9th Cir. 1995). Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (court will uphold Commissioner's decision when evidence is susceptible to more than one rational interpretation). However, the Court may only review the reasons provided by the ALJ in the disability determination, and may not affirm the ALJ on a ground upon which the ALJ did not rely. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted); see also Orn, 495 F.3d at 630 (citation omitted).

Lastly, even if an ALJ erred, a reviewing court will still uphold the decision if the error was inconsequential to the ultimate non-disability determination, or where, despite the error, the ALJ's path "may reasonably be discerned," even if the ALJ explained the decision "with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations, internal punctuation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110 (citing, inter alia, 20 C.F.R. §§ 404.1520(a), 416.920(a)). First, the ALJ considers whether the claimant currently performs "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine if the claimant has a "severe" medically

4

determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months. Id. If so, the ALJ proceeds to a third step to determine if the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations. See Rounds, 807 F.3d at 1001. If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step, the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she performed it when she worked in the past, or as that same job is generally performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016) (citing, inter alia, SSR 82-61); see also 20 C.F.R. §§ 404.1560(b), 416.960(b).

If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See 20 C.F.R. §§ 404.1520(g), 416.920(g); Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Id. at 1099 (citing 20 C.F.R. § 404.1560(b)(3)); see also 20 C.F.R. § 416.960(b)(3).

The claimant generally bears the burden at each of steps one through four to show that she is disabled or that she meets the requirements to proceed to the next step; the claimant bears the ultimate burden to show that she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d

5

1428, 1432 (9th Cir. 1995). However, if the analysis reaches step five, at step five the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See 20 C.F.R. §§ 404.1560(c)(1)-(2), 416.960(c)(1)-(2); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 2-3):

Issue No. 1: Whether the ALJ properly considered Plaintiff's treating physician's opinion; and

Issue No. 2: Whether the ALJ's finding that Plaintiff can perform past relevant work as a stocker and laundry worker is inconsistent with the DOTs.

### A. Evaluation of Medical Testimony

Plaintiff argues that the ALJ erred in failing to provide specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Bassanelli. (Jt. Stip. at 4.) The Commissioner contends that the ALJ appropriately accorded lower weight to Dr. Bassanelli's opinion. (Id. at 9-10.)

#### 1. Applicable Law

Three types of doctors may offer opinions in Social Security cases: (1) those who treated the plaintiff; (2) those who examined but did not treat the plaintiff; and (3) those who did neither. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Treating doctors' opinions are generally given more weight than those of examining doctors, and examining doctors' opinions generally receive more weight than those of non-examining doctors. Id.

Treating doctors' opinions receive greater weight because they are employed to cure and have more opportunity to know and observe patients as individuals. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either

6

a physical condition or the ultimate issue of disability." Id. However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Id. An "ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). To reject the un-contradicted opinion of a treating doctor, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barhnart, 427 F.3d 1211, 1216 (9th Cir. 2005). Where a treating doctor's opinion is contradicted, the "ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.

An ALJ need not recite "magic words" to reject a treating physician's opinion; the court may draw "specific and legitimate inferences" from the ALJ's opinion. Magallanes, 881 F.2d at 755. "[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

### 2. Analysis

Plaintiff argues that the ALJ should have accorded significant weight to the opinion of Plaintiff's treating physician, Dr. Bassanelli. (Jt. Stip. at 3.) On November 29, 2013, Dr. Bassanelli provided a letter opining that Plaintiff was incapable of performing any type of work due various mental issues. (AR 337-38.) Later, on April 2, 2015, Dr. Bassanelli wrote to another physician that Plaintiff was stable on her medication, but had lost her ability to work. (AR 378.) Because Dr. Bassanelli's opinion is contradicted by examining and non-treating physicians, the ALJ must provide "specific and legitimate reasons supported by substantial evidence" for rejecting Dr. Bassanelli's opinion.

Bayliss, 427 F.3d at 1216. The ALJ can satisfy the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

The ALJ proffered three reasons for according low weight to Dr. Bassanelli's opinion of total disability. (AR 28.) First, the ALJ asserted that Dr. Bassanelli's treatment notes, one of which referenced that Plaintiff was "very stable," were inconsistent with his opinion. (Id.) Second, the ALJ found that Plaintiff's daily activities undermined Dr. Bassanelli's opinion. (Id.) Third, the ALJ found Dr. Bassanelli's opinion was inconsistent with Plaintiff's admission that she did not always take her psychotropic medications as prescribed. (Id.)

First, as to treatment notes, although "a conflict between treatment notes and a treating provider's opinion may constitute an adequate reason to discredit the opinion of a treating physician," records reflecting "some improvement" must "be 'read in the context of the overall diagnostic picture the provider draws.'" Ghanim v. Colvin, 763 F.3d 1154, 1161, 1164 (9th Cir. 2014) (citations omitted) (rejecting ALJ's finding that treatment notes contradicted treating doctor's opinion). "[R]eports of improvement in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." Garrison, 759 F.3d at 1017 (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)). Signs of improvement over the course of treatment do not, in and of themselves, show that an individual is capable of performing work. See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("that a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace"); see also Ryan, 528 F.3d at 1200-01 ("Nor are the references in [a doctor's] notes that [the claimant's] anxiety

and depression were improving sufficient to undermine the repeated diagnosis of those conditions . . . .").

Here, while Dr. Bassanelli found that Plaintiff was stable in April 2015, his treatment notes demonstrate an uneven mental health trajectory over the course of Plaintiff's treatment during the period of alleged disability. For example, on November 23, 2010, Plaintiff presented with a stable mood, no complaints, and a desire to keep medication as prescribed. (AR 366.) On December 23, 2010, Plaintiff complained of poor concentration and presented as tearful, angry, and with an inability to focus; she was prescribed additional medication. (AR 363.) On April 4, 2011, Plaintiff felt as if she wanted to start working and she presented as pleasant and calm, with some tearfulness. (AR 359.) However, on October 5, 2011, Plaintiff was sad, depressed, had a "blunted affect" and complained of problems with her mood; her medication regimen was changed again. (AR 354.) By August 26, 2013, Plaintiff complained of anxiety, but presented as pleasant though she remained anxious and sad. (AR 340.) The up-and-down nature of Plaintiff's mental health is apparent over the more than twenty visits Plaintiff paid to Dr. Bassanelli over the course of several years. (See AR 339-69, 379-86.) A reference to then-existing medicated stability after treatment over a period of years is not incongruent with Dr. Bassanelli's ultimate opinion of disability. Garrison, 759 F.3d at 1017 ("[I]mproved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace"); see also Ghanim, 763 F.3d at 1164 (requiring mental health evidence be placed in context, and not "cherry-picked").

With respect to ALJ's finding that Plaintiff's daily activities undermined Dr. Bassanelli's assessment, the ALJ did not specify upon which daily activities the finding was based, but earlier in the decision, the ALJ found that Plaintiff engaged in a "somewhat normal level of daily activity," noting she

prepared meals, performed household chores, did grocery shopping and attended church and sporting events. (AR 24.)

Although an "ALJ can discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" (Molina, 674 F.3d at 1113 (citations omitted)), a finding of disability "does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (citations omitted). Further, "[h]ouse chores, cooking simple meals, self-grooming, paying bills, writing checks . . . as well as occasional shopping outside the home, are not similar to typical work responsibilities." Diedrich v. Berryhill, 874 F.3d 634, 643 (9th Cir. 2017) (citing Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)).

The activities in which Plaintiff engages appear consistent with those of someone who is attempting to carry on a normal life in the face of mental impairments and do not necessarily translate into skills transferable to work. The ALJ did not specify which of Plaintiff's daily activities were at odds with Dr. Bassanelli's opinion, nor did the ALJ make a finding that the daily activities upon which she relied "are transferrable to a work setting." Molina, 674 F.3d at 1113. In fact, the Ninth Circuit has concluded that the daily activities listed by the ALJ in another portion of the decision are "not similar to typical work responsibilities." Diedrich, 874 F.3 at 643. Plaintiff's ability to perform unspecified daily activities is not, in this instance, a specific and legitimate reason for discounting Dr. Bassanelli's opinion.

The third reason the ALJ offered to discount Dr. Bassanelli's opinion is Plaintiff's stipulation that she did not always take medications as prescribed. (AR 28, 51.) The Ninth Circuit has opined that "we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reasons to view such departures from prescribed treatment as part

of claimants' underlying mental afflictions." Garrison, 759 F.3d at 1018 n. 24. Plaintiff has stated, and the ALJ noted in his decision, that she suffers from forgetfulness. See AR 25, 26, 301, 312, 370. Plaintiff reported that she would become panicky and cry if she forgot to take her medication, suggesting that missing medication was not a volitional act. (AR 409.) During the hearing, Plaintiff intimated that she occasionally went off certain medications out of fear (see AR 51), consistent with it being caused by the illness, rather than an intentional, volitional act independent of her mental illness. Compelling reasons in the record support a finding that Plaintiff's failure to consistently take her medication was a result of her underlying mental afflictions; the failure does not support discounting Dr. Bassanelli's opinion.

The Court finds that the ALJ's stated reasons in giving Dr. Bassanelli's opinion little weight do not constitute specific and legitimate reasons that are supported by substantial evidence. As a result, the Court finds that the ALJ erred in her assessment of the medical evidence in determining Plaintiff's RFC and in concluding Plaintiff was not disabled at step four of the sequential evaluation. The Court notes that with respect to the other medical evidence, the ALJ gave "little weight" to the opinions of the State agency mental medical consultants (AR at 28) and gave only "not significant weight" to the opinions of the psychological consultative examiner, Dr. Campbell (AR 27). In light of the discounting of other medical opinion testimony, and for the reasons set forth above, the Court cannot find that the error is harmless.

**B. DOT Inconsistency**

Plaintiff argues that the ALJ committed error in concluding that Plaintiff was capable of performing past relevant work. Jt. Stip. at 18. Specifically, Plaintiff argues that the DOT descriptions provided by the VE are inconsistent with the RFC assessed by the ALJ. Id. at 19. The Commissioner contends that Plaintiff has: waived her ability to contest the VE's testimony; failed to meet

11

her burden to show she cannot perform her past relevant work; and inappropriately interpreted the RFC assessment. (Jt. Stip. at 22-25.)

As the Court finds herein that the ALJ erred in assessing Plaintiff's RFC, and because Plaintiff's claim of error with respect to the DOT's is based, in part, upon the RFC assessed by the ALJ, the Court declines to reach this issue.

### C. Remand is Appropriate

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by remand, or where the record is fully developed, the Court has discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").

Here, because, among other reasons, the ALJ did not reach step five in the sequential evaluation, the proper remedy is reversal and remand for further administrative proceedings.

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS THEREFORE ORDERED that judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this order

Dated: January 23, 2018

_____
JOHN D. EARLY
United States Magistrate Judge